JOHN D. GRAY, PLAINTIFF IN ERROR, vs. FREDERICK BELDEN, DEFENDANT IN ERROR.

A promise or undertaking by a defendant, whose property has been levied on and advertised for sale, to pay a sum of money exceeding in amount the *legal* interest of the debt for which the execution was issued, upon an agreement by plaintiff to stay the execution for a certain specified time, is a usurious contract; and the sum of money so stipulated to be paid cannot be recovered.

Error to the Circuit Court of Franklin County.

This cause was tried at the Spring Term, 1849, of Franklin County Circuit Court, before the Hon. GEORGE S. HAWKINS, Judge of the Western Circuit. The facts were these : Gray was security on a forthcoming bond, given by one Tobey, whose slaves were levied on, for a debt of $4,000, and replevied. The slaves were not forthcoming on the day of sale ; the bond was returned forfeited, and execution was issued against Gray, whose property was levied on, and advertized for sale. On the day of sale, Gray agreed with one T. J. Vickers, the holder of the execution, to give, and did give him a note for the sum of $200, payable thirty days after date, upon the consideration that Vickers would stay the execution for that time ; and the object of this stay is stated to be, that Gray might have time to go to Mobile, and get the slaves mentioned in the forthcoming bond, and have them sold, in discharge of the execution which had been levied on his own property. The note thus given was endorsed to Belden, the defendant in error, who brought suit thereon against the maker. The defence set up was usury.

On the trial of the case, defendant's counsel prayed the Court to charge the jury—

1st. That if they believe that the note sued on was given in consideration of a forbearance of the enforcement of a debt of $4,000 for thirty days, then it is an usurious contract.

2d. That if they believe the contract usurious, then they will find for the plaintiff only so much money as may be the legal interest of $4,000 for thirty days.

3d. If the whole note is for interest, no other consideration having been proved, then the jury will find generally for defendant—which

instructions the Court refused to give, but instructed the jury in sub-stance as stated in the opinion of this Court, pronounced by Justice Baltzell. To this refusal of the Judge to give the instructions asked, and to the instruction given, the defendant by his counsel excepted.

*Thompson,* for plaintiff in error :

The errors assigned in this case are,

1. The refusal of the Judge below to instruct the jury, as prayed by the plaintiff in error. And

2. The instructions given by the Judge below to the jury.

The facts proved set forth a clear usurious transaction. A for-bearance to enforce an execution for a debt in consideration of a sum of money beyond the legal rate of interest, is usurious. In this case it fully appears that the note sued upon was made and executed upon the consideration of a stay of execution for thirty days, and was in addition to the legal interest.

If we have erred in our view of this case, the long sought for de-vice to cover an onerous and illegal exaction for the forbearance of moneys, has been discovered in this transaction, but we feel confi-dent that even this chevizance will fail in its intended effect.

The case of Cleveland vs. Dare, decided in South Carolina in 1824, is precisely analagous with the case at bar. In that case, de-fendant's property was levied on, and in consideration of a postpone-ment of the sale which was advertised for September, 1823, to the ensuing sale day, just one month, defendant gave the plaintiff his note for $100. Suit being brought upon this note, the defence was, that it was an usurious contract, and it was so held by the unanimous opin-ion of the Court. See Harper's Law R., 407.

So, also, in North Carolina, in the case of Carter vs. Brand, where Brand had a judgment and execution against Carter, which had been levied, and Brand agreed to stay proceedings for eighteen days, in consideration of the sum of ten dollars over and above the interest, which was paid. In an action by Carter *qui tam* for the penalty given by the statute, the Judges, in conference, were clearly of opin-ion that it was a case of usury, and it was so adjudged. Cam. & Norw. Conf. R., 28.

The facts being ascertained whether a contract is, or is not usuri-ous, is a question of law for the Court, and it seems to me, that upon

principle and reason, the Court below should have adjudged this case usurious.

It is not necessary to prove a corrupt agreement, for a contract may be usurious, though the parties did not know that it was contrary to law. Thompson vs. Nesbit, 2 Rich. R., 73. Marsh vs. Martindale, 3 Bos. & Pul., 159.

The Court will find in the case of Thompson vs. Nesbit, cited above, a very ingenious expedient adopted with the view "to steer clear of usury," in the sale of a chattel, but which was nevertheless determined by the Court to be but an artifice to gain usurious interest.

*Davis*, for defendant in error:

The contract was not usurious:—1st. Because the evidence does not show any device or attempt to violate the statute. The *intent* must appear. If it does not, it is not usury. 9 Pet. S. C. Rep., 399, 400, 224.

The contract was not to give further time of payment *alone*, so that Gray might use the money, in consideration that he would pay a certain sum by way of compensation. The agreement was, that he might have a further time, for the *purpose* and with the *intent* to enable him to produce the property of Tobey, and substitute it for his own.

2d. The consideration to support the note is not forbearance alone. The plaintiff in the *fieri facias* jeopardized *his debt,* by agreeing to stay the execution—he incurred the risk of losing his preference—he incurred the hazard of the death or absconding of the negroes. "Staying the execution," means suspending the right to proceed on the judgment. Vickers could not have seized the property, and he had no right to have a levy on a forthcoming bond. The *fieri facias* should have been returned, in accordance with the agreement to " *stay* the execution ;" and a new one could not have been issued, until the expiration of the time agreed on. If there was a *good* and valid consideration, over and above the forbearance, and one which, in itself, would have been sufficient to have supported a promise to pay the money ; and if the parties in making the agreement, had in view the production of the negroes of Tobey, and not a prolongation of the credit on the debt, the contract is valid—the fact that the sum agreed to be paid was more than legal interest, does not, of itself,

render it usurious. A contract to pay more than legal interest—in consideration of the loan of money, and the performance of other acts —the waiver of rights—is not usurious. 2 Con. Rep., 341. 8 Con. Rep., 513. Ibid, 52. U. S. Dig., Supp. Jus., vol. 2, page 906–7.

3d. The agreement was not for a *loan*—it was for the continuance of a loan. The parties looked *not* to the ultimate payment of the debt by *Gray,* but to its collection from Tobey. It was to enable Gray to cause *this result,* that the time was given. He, (Gray,) at the time he made the contract, hoped to be able to produce the property of Tobey, and to make it pay the debt. The plaintiff had the right to collect the debt *then* from Gray, and to leave him to seek his redress by action against the principal. The agreement was a waiver by Vickers of his said right, and a benefit to Gray, saving his property from sale, and saving the circuity of action against Tobey.

The case here *varies materially* from that of a forbearance by a plaintiff to proceed against an original judgment debtor—when there is no benefit arises to the defendant, *but the delay*—the day of payment *put off*—and no object on the part of *either party,* but *to extend the credit,* or to *alter time. Here* there are *other* and *important* objects to be answered, by the forbearance to proceed under the judgment on the forthcoming bond. The object to be attained, and that which was the *chief inducement* which led to the formation of the contract, was, *that the debt might be collected out of the property of Tobey, the principal.* The intention was *not* that Gray should pay the money at the expiration of the day of grace, but that he might relieve himself and his property from *all liability ;* that he did so, is fairly to be inferred from the facts stated. If he did not, it was for him to have shown it.

BALTZELL, J.

This was a suit instituted in the Court below to recover from the defendant, Gray, the amount of a note executed in 1841, for two hundred dollars. The defence was usury. On the trial, the Court below instructed in favor of plaintiff, and refused various instructions asked by defendant, to which he excepted, and has brought the matter to this Court by writ of error. It is proper that the mode of consideration by Appellate Courts of a case so situated should be well considered and understood, and I propose to regard it upon authority

of the Courts in England and this country, professing to follow the common law. " At common law, a writ of error lay for error in law apparent on the record, but not for an error in law not apparent upon the record. If a party alleged any matter of law at the trial, and was overruled by the Judge, he was without redress, the matter not appearing on the record." 2 Institute, 42. To remedy this evil the statute was passed which gives the bill of exceptions. It is to correct an error in law." By C. J. Marshal, ex parte Crane, &c., 5 Peters, 199. The statute passed as early as 13 Edward 1, is in these terms, " Where one is impleaded before any of the justices, and doth allege an exception praying that the justices will allow it, which if he that hath alleged the question do write the same exception, and require, the justices will put their seal as a witness, the justices shall do so." 1 Starkie, 465. " The statute is silent as to the time of tendering the bill ; it has been held on reason and principle that it must be done at the trial, for the party may have misled his adversary by not insisting on his objections at the time." Ibid, 465. " It is not to draw the whole matter into examination." Again, " it is only for a single point, and the truth of it can never be doubted after the bill is sealed." " It lies only to exceptions taken at the trial to the ruling of the law by the judge, and to the admission or rejection of the evidence." " Beyond this," say the Supreme Court of the United States, " we have no power to look into the bill on a writ of error, as it is a creature of the statute and restricted to the points stated." Ex parte Crane, &c., 5 Peters, 199. 4 Howard, 298, 401, 292, 418, 541.

" The exceptions taken at the trial," say the Court of Appeals of Virginia, " present the only points for the consideration of the Court." The Supreme Court of New York, say, " Though a jury find a verdict against the evidence, the error cannot be corrected on a bill of exceptions ; the remedy is by a new trial. It (the bill) does not draw the whole matter into re-examination, but only the points upon which it is taken, and the party must lay his finger upon these *points.*" 1 Leigh, 86. 1 Wendall, 418. 1 Cowen, 622. 14 Johnson, 304.

" The proper function of a court on a writ of error, is to pass its judgment upon the points excepted to in the opinion of the Court below, and not to decide the law of the case in anticipation of its trial below." 16 Peters, 318.

Passing then from this point, we proceed to regard a question of no less importance ; how the instructions themselves are to be treated, and about which the decisions of the Courts are equally clear. " The charge of the Court below, should be interpreted with reference to the testimony which is shown to have preceded it, upon which, in truth, it was prayed—with reference also to the reasonable conclusions which that testimony tended obviously to establish." " In examining the charge, its whole scope and bearing must be taken together. It is wholly inadmissible to look at detatched passages. In short, we are to construe the whole as it must have been understood both by the Court and jury at the time when it was delivered." Rhett vs. Poe, 2 Howard, 481. 4 Howard, 245. 7 Peters, 390. Again, " The instructions were intended by the Court to be legal conclusions from all the evidence in the case. Our inquiry will be, are they so ? And as legal conclusions, were they given in such terms as in no way to encroach upon the province of the jury to weigh the evidence as to the facts of the case." Gratiot vs. United States, 4 How., 110. " It is sufficient if the instructions given are applicable to the evidence before the jury, and the merits of the case as presented by the parties." 3 Howard, 688.

The Court below, in the case before us, instructed the jury that " the statute of usury was inapplicable to the case—that the contract was an original one, and not for the payment of money, bringing it within the statute of usury—that the consideration was a good one and that if the jury are of opinion that the note was given altogether for the forbearance to push the execution, they will find for the plaintiff." The facts upon which these instructions were given, and upon which we must base our opinion as to their correctness, are succinctly stated in the testimony of W. G. M. Davis, which indeed is all the testimony in the case, as follows : " Merchants Bank at St. Joseph had a fieri facias for about $4000 against Tobey, whose negroes were levied on and replevied, a forthcoming bond being given, and Gray was security on the forthcoming bond. The negroes were not forthcoming on the day of sale, and the bond was returned forfeited, and execution was issued against Gray on this bond, and his property, negroes, &c. levied on and advertised for sale. On the day of sale, by agreement, Gray gave the note sued on to Vickers, payee and holder of execution, in consideration

that Vickers would stay the execution for thirty days, in order to give Gray time to go to Mobile, and get the negroes mentioned in forthcoming bond, and have them sold, in discharge of the execution against him, founded on the forthcoming bond."

Do these facts present a case of usury, or of a valid and binding contract, supported by a fair and good consideration? We see a defendant in execution, occupying the position of a security, and upon whose property an execution for the large sum of $4,000 had been levied, obtaining the short grace and suspension of a month, by an engagement to pay the large sum of two hundred dollars—the legal interest is about the sum of $26 66; so that this engagement would give to plaintiff more than eight times the amount of the legal rate of eight per cent. allowed by law. Is a proceeding of this kind usurious?

We confess we cannot regard it in any other light than as embraced by the statute. The statute, in its ordinary application, acts upon voluntary engagements, created by the loan of money, where the party may, if he thinks proper, reject the terms proposed, and seek out another mode of relief. With what additional force may it not apply to a case like the present, where defendant was wholly in the power of plaintiff—no option of declining his terms—no hope of relief elsewhere; a case, indeed, in which the plaintiff in execution held the power and the dominion without control. Such a position presented temptations which the law might well desire to restrain and prevent. When it is considered, too, that our laws forfeit the interest only, there is not the reluctance felt by the Courts, on occasions where the loss of the entire debt is the consequence; nor is there any want of authority directly on the point.

The case of Cleveland vs. Ware, decided by the Constitutional Court of South Carolina, presented facts identical with the present. Defendant's property was taken under execution by the sheriff, and advertised for sale. He agreed to give his note for $100, (the execution being for $1,400,) if plaintiff would indulge him until next sale day. In an action on the note, the Court say—" He secured himself an interest on the debt at the rate of about eighty-five per cent. per annum—and if such a contract was good for one month, it must be for a year, and so on, *ad infinitum*." They sustain their decision by reference to Pollard vs. Schley, Croke Eliz., 20, referring to

1 Vesey, Jun., 53, and declare, without hesitancy, the note to be usurious.

To the same effect, is a case decided by the Court of Conference of North Carolina, Carter *qui tam* vs. Brand, in which the agreement was to pay £10, for a stay of eighteen days on an execution of £106, and the Court declared the agreement usurious, saying—" No part of the principal is put to hazard, but the whole is actually secured by the levy ; nor is the agreement to pay the excess subject to any contingency, but positive and absolute." N. Carolina Confer. Rep., 28–30. These cases are too clearly in point to leave the question open to argument or consideration on general principles, as a new question.

The case of Smith vs. Algar, 1 B. & A., 603, to which we have been referred, as sustaining the contrary doctrine, was, that of a third person, bargaining with the plaintiff to stay his execution, if he would pay him £107, but this agreement was not with defendant in execution, the party was not under the pressure of the execution— was free to contract or not, as he pleased—he had not borrowed from plaintiff, nor stood security for the borrower.

It is insisted that the plaintiff in *fieri facias* jeopardized his debt, and incurred the risk of losing his preference ; but we find no evidence to this effect in the record. There is proof only of an agreement to stay the execution, none of a release or discharge of the levy—no delivery of the property to Gray—no proof of other executions, justifying the inference that there was risk of loss. The most we can regard in proof was, that there was a suspension of the sale under execution for thirty days.

Again : It is said the agreement was not for a loan. We do not understand the statute to confine usury to such a case merely. The third section provides, that " when any note, bond, &c. shall be upon or on account of any usurious contract, the interest shall be void, and the obligor forever exonerated from the payment of the same." Duval, 78–9.

Again : It is urged that the chief inducement to the contract was the collection of the debt out of the property of Tobey, the principal. Our proper inquiry is with the action of the plaintiff, and whether the consideration with him for granting the extension of thirty days, was not a rate of interest proscribed under the statute as

usurious.   There was not  only an obligation on  the part of Gray to pay this debt, but an execution against him.   It was, in effect, as if a  judgment had been  obtained  against Gray and his principal, with an execution  issued, and an agreement had been  made with  either for indulgence, under the terms prescribed by the plaintiff.

We cannot distinguish the case before us from the cases to which we have already referred as conclusive.   We, therefore, think  the instructions given by the Court below erroneous.

The defendant moved three instructions to the jury, which the Court refused to give, and the correctness of this ruling is also presented for our consideration.

The opinion expressed above affirms the correctness of the two first, which it is unnecessary to notice more particularly.

The third instruction asked for was, " if the whole note was for interest, (no other  consideration being proved,) the jury will find for defendant."

Is it competent for a  Court thus to  instruct a jury ?   If so, under what circumstances, should such an instruction be  given ?   In a recent case, decided by that very able Court, the Exchequer of England, it is said—" the judge has a right to act upon all the uncontradicted facts of a case ; it is not necessary to leave every part tö the jury.   It is only when some  doubt is attempted  to be thrown  upon the credibility of the witnesses, or where some contradiction occurs, or some  inference is attempted to be  drawn from some former fact not distinctly sworn to, that the  judge  is called upon to submit any question to the jury."    11 Meeson & Welsby, 217.

In Ewing vs. Burnet, decided by the Supreme Court of the United States, plaintiff moved the Court to instruct the jury that he was  entitled to recover, which was  refused and  excepted to.   The  Court say, " before this motion could be granted, the Court must have been satisfied that there was nothing in the evidence nor any fact  which the jury could lawfully infer therefrom, which could in any way  prevent plaintiff's recovery."   11 Peters, 50, 51.

. The case of McNeille vs. Holbrook, decided by the  same  Court, Ch. Justice Taney, delivering the opinion, is full to the entire  question.    The defendant moved to instruct the  jury,  that the  evidence given on the part of the plaintiff was not sufficient to entitle  him  to recover on three of the notes, and a second instruction.

The Court refused these instructions, and directed the jury that the evidence was sufficient to entitle plaintiff to recover. The Supreme Court sustained the decision, saying " as to the first instruction, the negotiation as disclosed by the testimony was concerning the time of payment and not in relation to the amount to be paid, and there was an admission of the debt," &c.

" As to the second prayer, the Court would have been unquestionably bound to give it if there had been any testimony from which the jury could have inferred that that admission was an offer of compromise. The same reasoning applies to the direction which the Court gave. If there had been any evidence conducing to prove the fact insisted upon by defendant, the jury were certainly the proper judges of its sufficiency, and the Court could not, without encroaching upon the province of the jury, have instructed them on that point. But there was no contradictory testimony, nor any testimony in relation to the credibility of the witness." 12 Peters, 88.

In Toland vs. Sprague, the error assigned was, " that whether there was a stated account was a question of fact for the jury, and that the Court erred in taking that question from them." The Court say, " the answer is, there was no dispute about the facts." 12 Peters, 336. To the same effect was the decision of the Supreme Court of Florida, in Sessions vs. Stephens, 1 Florida Reps.

There are abundant other cases of the same Court affirming the same doctrine. In the case of Thompson vs. Nisbet, the Court of Appeals of South Carolina, say, " the facts are undisputed, and present a case for the judgment of the Court with the same certainty as if they had been found by a special verdict." " Whether a contract is usurious, is a question of law. If the facts be disputed, the decision of them is submitted to the jury with instructions, and if on a clear and uncontradicted state of facts, the Court does not give judgment, it surrenders to the jury its proper function and authority to enforce the law." 2 Richardson, 75.

It is believed to be the received doctrine of all the Courts in the Union, where not inhibited by special, legal prohibition. We are, then, of the opinion, that the third instruction should have been given. The judgment of the Court below, will be, therefore, reversed with costs, and the cause remanded for a new trial to be had therein, not inconsistent with this opinion.

[On a subsequent day, near the close of the term, Chief Justice Douglas delivered the following opinion in this case for himself and Justice Lancaster, the object and design of which will be seen by reference to the opinion itself:]

We concur in the conclusion to which Judge Baltzell has arrived in the opinion pronounced in this case : that the contract sued upon was usurious : that the Court below erred in its instructions to the jury in regard to the question which there arose, whether it was usurious or not. But we did not deem it necessary to discuss the doctrine relative to the powers of the Court to charge a jury, or the nature of the instructions that may be given, as no questions of that kind were presented by the record. It was not pretended that the Court had exceeded its powers in charging the jury, or that it had departed from the evidence in the instructions it gave, the only complaint being that it had taken an erroneous view of the law applicable to the case made by the proof. We therefore thought it better to leave those questions to be discussed when a proper case should arise.

We did not, therefore, look into the authorities cited upon those questions. The course of argument and authorities cited, seemed well calculated to leave the impression upon the mind of the reader, that this Court entertains the opinion that a Judge in this State may charge the jury upon the facts of the case, and express to them his conclusions and deductions from the testimony adduced in the case, propositions to which we cannot assent. We have, therefore, looked into some of those authorities since that opinion was pronounced, and so far as our examination has extended, we think that when they are fully read, and their whole scope and bearing duly considered, they will be found generally to sustain the doctrine laid down in 11 Peters' Reps., 50, 51, which is one of the cases to which reference is made, though the part we quote is not cited. The Court in that case, immediately following the citation alluded to, said, " it is the exclusive province of a jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of a witness, and the weight of testimony as tending in a greater or lesser degree to prove the facts relied on. And these were matters with which the Court could not interfere." And this we deem to be in accordance with sound principles, and well sustained by authority. The case of Thompson vs. Nesbit, cited from 2 Richardson

Law Reps., 75, was a motion for a new trial on the ground that " the evidence clearly established a case of usury, and his Honor should so have charged the jury, and the verdict is contrary to the law and the evidence." The Court said, " the facts are undisputed and present a case for the judgment of the Court, with the same certainty as if they had been found by a special verdict." Whether a contract is usurious is a question of law. And either because the Court had not laid down the law to the jury, upon that question, with sufficient clearness and force, or because the Court considered the verdict to be contrary to law and the evidence (it does not appear which,) a new trial was granted. The Court in the case of Mitchel vs. Williams, 11 Meeson and Welsby, 216, also cited, (which was likewise a motion for a new trial) held that where there is an uncontradicted state of facts, or the facts are immaterial, the Court need not charge the jury upon them at all, a doctrine not in accordance with that which the case of Thompson vs. Nisbet seems to have been cited to sustain. And if this be sound law, (a question we need not decide) the Court in the latter case must be presumed to have granted the new trial, because the verdict was " against law and evidence," and not because the proper instruction was not given to the jury. In regard to the case of Sessions vs. Stephens, 1 Florida R., 239, it might, perhaps, be sufficient to say, that it was decided before our statute of January 3d, 1848, " To amend the act regulating judicial proceedings," which especially prescribes that " the Judge presiding on the trial of a common law case shall charge the jury only upon the law of the case," was passed. But it may not be improper to observe that much of the language of the bill of exceptions in that case, seems to be rather that of the counsel who drew it, than of the Court speaking to the jury, for by reference to the record, it appears that it contains the following passage, viz : " In this case it was clearly proven that Sessions took the note after it became due, and that before he took it the defendant had been garnisheed by one James Branon. Held that plaintiff is not entitled to recover."

The language therefore, had undoubtedly been changed, and very likely in the hurry of business some portion of the charge was inadvertently left out ; but if given in that strong language to the jury, without leaving to them the question whether such facts were proven or not, the Judge who tried that cause is satisfied upon the most ma-

16

ture reflection that it was not justified by sound principles even before the passage of our statute above mentioned, unless the facts were fully and distinctly admitted. And we are clearly of opinion that such mode of charging is by that statute now clearly prohibited.

The Supreme Court of Iowa, in the case of Frederick vs. Gaston, 1 Green's Reps., 403, 404, said : "It is very evident to us, that the Court instructed the jury upon questions of fact, which we think the Court ought never to interfere with in jury trials. At common law, it is true, (say that Court,) the facts and testimony were taken up in this order by the Judge, and placed in review before the jury, and the practice was frequently carried to such an alarming extent, that the jury became mere machines in the hands of the Court, to reflect back a verdict, which the Court would more than intimate, by a particular reference to and application of the facts ;" and after noticing that, in many States of the Union, it is the practice of the Courts to charge the jury upon the facts, say—" But, in this State, the Legislature, to protect the people against any such interference of the Court, upon matters of fact submitted to the jury, and to secure to the parties a just and perfect trial, have passed a law, by which the Courts are confined to instructing the jury upon questions of law." The statute provides that the District Court, in charging the jury, shall only instruct them as to the law of the case, (citing Revised Statutes, page 475, sec. 35,) and adding—" The only safe rule is to confine the Courts to the law ;" and in this sentiment we fully agree with that Court, and we deem it very important that the boundaries between the power of the Court and the province of the jury should be distinctly preserved. In the case of the King vs. The Dean of St. Asoph, Lord Mansfield observed, " That the fundamental definition of trial by jury depended upon the universal maxim, '*Ad questionem juris non respondent juratores, ad questionem, facti non respondent judices ;*' " and his Lordship added, " Where a question can be severed by the form of the pleadings, the distinction is preserved upon the face of the record, and the jury cannot encroach upon the jurisdiction of the Court—where, by the form of the pleadings, the two questions are blended together, and cannot be separated, upon the face of the record, this distinction is preserved by the honesty of the jury. The constitution trusts that, under the direction of a Judge, they will not usurp a jurisdiction that is not their province.

They do not know, and are presumed not to know, the law—they are not sworn to decide the law—they are not required to decide the law. It is the duty of the Judge, in all cases of general justice, to tell the jury how to do right, though they have the power to do wrong, which is a matter entirely between God and their own consciences." 21 Howard's State Trials, 1039, 1040.

Mr. Hargrave, in a note to Coke on Litt., 1551, after a dissertation on the subject, marked with his usual refined learning, states the result to be, " that the immediate and direct right of deciding upon questions of law is intrusted to the judges—that in a jury, it is only incidental—that, in the exercise of this incidental right, the latter was not only placed under the superintendence of the former, but are in some degree controlled by them, and, therefore, that, on all points of law arising on a trial, juries ought to show the most respectful deference to the advice and recommendation of the judges." 2 Wynne Eunomus. Bushell's case, 6 Howard's State Trials, 999, 1008, 1013, 1014. Vaughan Rep., 135, S. C. Franklin's case, 17 Howard's State Trials, 625. The King vs. Woodfall, 5 Burrow, 2661. To all this we freely assent ; but the principle here asserted by Lord Mansfield is to be taken in connection with what is said by the same learned judge and distinguished jurist, viz : " That the fundamental definition of the trial by jury depends upon a universal maxim, which is without exception ; though a definition or maxim without exception, it is said, is hardly to be found, yet his Lordship considered this to be a maxim without exception—' *Ad questionem juris non respondent juratores, ad questionem facti, non respondent judices.*' " Worthington on Juries, 131, 132. " That declaration in our books, ' *Ad questionem facti, non respondent judices, ad questionem legis, non respondent juratores,*' taken literally, (says the author,) is true ; for if it be demanded what is fact, the Judge cannot answer it ; if it be asked what is law in the case, the jury cannot answer it." Worthington on Juries, 129, 130. 27 Law Library, 42, 43.

Our statute was doubtless passed for the same purpose as that of Iowa, to secure to the parties a full and perfect trial, without interference of the Court upon matters of fact, and preserve the purity of jury trials. We have deemed it advisable to say this much upon this subject, by way of *protestando ex abundanti cautela,* lest, hereafter,

at any time, it should be said that we had assented to doctrines which tend to sustain a course of proceeding, not in accordance with the provisions of our statute above mentioned, which, in our opinion, governs the Courts of this State, upon the subject we have had occasion to consider.    [Note.]

NOTE.—Judge Baltzell requests the Reporter to state, that the foregoing opinion was not submitted to him, nor was it considered in conference with the Judges. Several weeks after the principal opinion was delivered by him as the judgment of the Court, the Chief Justice produced and read in open Court the foregoing as the opinion of himself and Judge Lancaster, and this was the first time Judge B. saw it. He does not (he states) feel called upon to express his approbation *of*, or dissent from, the views taken, which he might have done, if the opportunity had been afforded him, according to the regular action of the Court. If the majority disagree with the sentiments or views expressed in an opinion, their course (in the opinion of Judge B.) is to recall and correct it. But they are concluded from *dissent*, after allowing an opinion to be read in Court as their judgment.

The Reporter would add, that there is no difference between the two opinions upon the only question in the case—that is, whether the contract sued on was usurious or not.