CALVIN L. ROBINSON, APPELLANT, VS. F. F. L'ENGLE, ADMIN-
ISTRATOR OF W. J. L'ENGLE, DECEASED, APPELLEE.

1. It is not necessary under the laws of this State, that a bill of exceptions in civil causes should be sealed by the Judge, the signing by him is sufficient.

2. A memorandum made by the Clerk of the Court, in taking down the testimony of witnesses, as that certain questions were asked and not allowed by the court, and exceptions taken, is not a part of the record and does not dispense with the preparation and signing of a bill of exceptions, in order to bring the matter before the appellate court.

3. In an action upon an express covenant in a lease for the payment of rent, and without conditions, a plea that the lessee was "deprived of the beneficial use of the premises by the casualties and violence of war,"

does not show a defence to the action. The loss of the use of premises by fire, inundation, or external violence, will not exempt the tenant from his express contract to pay rent.

4. Where a plea is overruled on demurrer with leave to defendant to amend, and taking no exception to the ruling of the court, he files an amended plea, he thereby abandons his first plea and waives his right to take advantage of the ruling of the court upon the demurrer, and cannot assign it for error.

5. An offer to perform in part the covenant to pay rent, on condition that the lessor will abate the residue of the rent, to-wit: the rent accrued during the time the tenant was deprived of the use of the premises by the violence of war, is not a legal defence, nor a "defence upon equitable grounds" under the statute.

6. A plea of *set-off* of damages sustained by defendant growing out of a conspiracy against him, entered into by plaintiff and others, will not be sus tained on demurrer. A set-off can be allowed in an action on contract, of matters only growing out of contract, express or implied.

This was an action of covenant commenced by the appellee (plaintiff) against the appellant, in the Circuit Court of Duval county in 1866. The declaration sets out the terms and conditions of a lease executed on the first day of October, 1859, by Wm. J. L'Engle of one part, and C. L. Robinson of the other, under their hands and seals, whereby said W. J. L'Engle demised to appellant the east-half of water lot number 26, in Jacksonville, for the term of ninety-nine years, at the annual rent of $160, payable semi-annually in advance, the appellant to pay all taxes, &c.; and Wm. J. L'Engle having died, F. F. L'Engle, his administrator, brings suit to recover the arrears of rent alleged to be due thereon.

On the 5th of August, 1867, appellant, by his attorney, filed six pleas, and on the 14th of September, an additional plea. On the 8th of October plaintiff demurred specially to each and every of the pleas. On the 11th of October the demurrer was sustained as to each of the pleas except the 4th, and leave was given by the Judge to appellant to amend his plea, and to the plaintiff to reply to the 4th plea.

On the same day, October 11th, 1867, the appellant filed his amended pleas, to-wit:

I. No rent in arrear.

II. Eviction by plaintiff.

III. Payment.

IV. Set-off against plaintiff, administrator, for goods sold and delivered.

V. "That he was deprived of the beneficial use of said premises by the casualties, accidents and violence of the late war between the so-called Confederate States and the Government of the United States, from the first day of April, 1862, to the first of October, 1865."

VI. "For a defence upon equitable grounds, defendant says, that he offered at divers times in 1866 to re-occupy the premises and perform his covenants, provided the plaintiff would abate the rent during the period he was deprived of their use, as aforesaid, which plaintiff refused to do." ·

To the fourth plea, first pleaded, and to the first, second, third and fourth of the amended pleas, the plaintiff joined issue and demurred to the above 5th and 6th amended pleas, on the ground that they do not set forth any sufficient legal defence, and because the 6th plea sets forth no ground for equitable interference under the statute, &c.

On the said 11th of October, the court sustained the demurrer, and the following endorsement appears on the back thereof: "Demurrer sustained to pleas Oct. 11, 1867. Defendant's counsel excepts to the ruling of the court sustaining the demurrer. Exception noted Oct. 11, 1867.

"B. A. PUTNAM, Judge."

Dec. 7, 1868, appellant filed two additional pleas, to-wit: "That plaintiff's intestate in his life-time, and the plaintiff administrator since the death of the intestate, to-wit: about the 10th of April, 1861, entered into a conspiracy with divers other persons against defendant, whereby he sustained damages to his property to the amount of $50,000, which he is . willing to set off against plaintiff's claim."

And further: "That Wm. J. L'Engle, intestate, on or about the 10th of April, 1861, entered into a conspiracy

with divers persons against defendant, whereby he sustained great damage and injury," to-wit: $50,000, which he *is ready to set off to the extent of plaintiff's claim, &c.

To these pleas a demurrer *ore tenus* was interposed and sustained, as appears by an endorsement thereon as follows: " Demurred to *ore tenus*. Demurrer sustained. Exception taken by defendant's attorney. A. A. KNIGHT, Judge."

A paper is appended to the record, which is entitled a " Bill of exceptions taken by defendant," and is as follows:

" 1. Defendant excepts to the ruling of the said court sustaining the demurrer of plaintiff to the defendant's fifth and sixth pleas, endorsed as amended pleas and filed in the above cause October 11, 1867.

" 2. Defendant excepts to the ruling of the said court sustaining the demurrer to defendant's plea put in as an amendment to his several pleas and filed September 14th, 1867.

" 3. That the court erred in sustaining the demurrer to defendant's pleas, filed in said cause December 7, 1868, and endorsed as additional pleas, which were demurred to *ore tenus*.

" 4. The court erred in this, that defendant offered to prove, by Francis F. L'Engle, that the said L'Engle was the agent of Wm. J. L'Engle in 1861, in the lifetime of the latter, and that the court ruled that the said F. F. L'Engle was not a competent witness to prove that agency; and defendant, by his counsel, H. Bisbee, Jr., stated to the court that he desired to prove such agency as a foundation for evidence that the said F. F. L'Engle, agent of W. J. L'Engle, opened an account with defendant and purchased goods and merchandise of the defendant under the agreement that the said goods should be applied towards payment of the rent accrued and accruing upon the lease, the subject of the said suit.

" 5. The court erred in this, that defendant was put upon the witness stand and interrogated as to what time he (de-

fendant) was evicted or expelled from the half lot in question in this suit, and the court ruled out the interrogatory.

" 6. The court erred in this, that defendant put Charles L. Mather upon the witness stand and asked him if he, as clerk of defendant, opened an account with Francis F. L'Engle, representing himself as the agent of William J. L'Engle, and that the court ruled out the question as being improper to prove agency.

" 7. The court erred in this, that E. M. L'Engle, plaintiff's attorney, was sworn and asked whether or not he knew that F. F. L'Engle had a power of attorney constituting him the agent of W. J. L'Engle in his lifetime, and that the court ruled that the said E. M. L'Engle, attorney of plaintiff, was protected from answering said question on the ground that it was a privileged communication from his client, the plaintiff in the said suit."

" Allowed, with the exception of the first two exceptions, which rulings were made by my predecessor, and for which I am not responsible. December 18, 1868.

" A. A. KNIGHT, Judge."

" The ruling of the court, in refusing to allow the first two exceptions, was duly excepted to and exception allowed. December 18, 1868.          "  A. A. KNIGHT,

" Judge Fourth Judicial District."

Verdict and judgment for plaintiff, from which the defendant appealed.

*H. Bisbee, Jr.,* for Appellant.

1. Defendant, lessee, appellant in this court, is not bound to pay rent for the time he was deprived of the use of the premises by the casualties and violence of war. 1 Hill. Abridgment, p. 163, sec. 7 ; 4 McCord, (S. C.,) 447 ; 1 Bay, (S. C.,) 491 ; 1 Dallas, 210. The equity of the rule in the last cited case is applicable to the case at bar.

2. This suit was brought to recover for the use of property within the meaning and intent of the 6th section of the

Robinson vs. L'Engle—Argument of Counsel.

act of Congress of July 17th, 1862, pleaded by defendant, and is a complete bar to plaintiff's claim.   12 U. S. Stat. at Large, p. 591 ; 2 Brightly, 195–6.

3. Set-off of damages, resulting from the conspiracy pleaded by defendant, is a legitimate subject of set-off under the laws of the State of Florida.   Thomp. Dig., 347.   *Demand*, used in the statute, is a term of more extensive meaning than any other known to the law.   Co. Litt., 291 ; 2 Hill, (N. Y.,) 220 ; 6 Watts & Sergeant, 226 ; 9 Serg. & Rawle, 124.

4. An agent is a competent witness to prove the *fact* of his agency, to prove the making of contracts, and to prove his own authority, if it be by parol.   6 Fla., 52 ; Greenl. Ev., I vol., sec. 416, last of paragraph ; 10 Serg. & Rawle. 251 ; 7 Term, 480 ; 2 East, 458 ; 9 Cush., 338.

5. Defendant was a competent witness to prove his eviction and the time thereof.   Laws of Florida, 1865–6, p. 35.

6. Defendant's clerk, Charles L. Mather, was a competent witness to prove the agency of plaintiff in question, and the set-off pleaded and payment.

7. The plaintiff's attorney, E. M. L'Engle, was not protected, on the ground of privileged communications, from testifying as to the *fact of the existence* of the power of attorney mentioned in the seventh exception, though he may be privileged from testifying as to the contents of the same. 17 Johns., 335 ; 18 ib., 330 ; I vol. Greenl. Ev., sec. 241, and cases cited in note 1.

The words, lease and demise, contained in the lease in question, import an implied covenant of quiet enjoyment, and every grant implies that the thing granted shall be beneficial to the grantee.   Washb. Real Prop., 325 ; 4 Cushing, 24.

*E. M. L'Engle* for Appellee.

Every fair intendment is to be made in support of the judgment below.

When there is no bill of exceptions to show on what ground the court decided, it will be presumed that it decided correctly.

Unless the testimony in the case is brought before the Supreme Court by a bill of exceptions, it cannot regard it. 6 Fla., 516 ; 5 ib., 465 ; 9 ib., 422 ; 5 ib., 276 ; 8 ib., 143 ; 11 ib., 137, 140 ; 1 ib., 297 ; 16 Peters, 318.

The paper purporting to be a bill of exceptions in this case is really exceptions filed by defendant's counsel, (or required to be filed by Rule 13 of the Rules of the Supreme Court,) though these exceptions are signed by the judge below instead of by counsel. There is no bill of exceptions, the paper purporting to be such does not follow the form of a bill of exceptions, is not sealed by the judge, has not the evidence incorporated in it, and has not been ordered by the court to be made a part of the record, which are the requisites of a bill of exceptions. 1 Wallace, 592 ; 20 How., 427 ; 9 Fla., 422 ; 6 ib., 516 ; 5 ib., 465 ; 3 ib., 114 ; 11 ib., 137, 140 ; 3 Black., 372.

Unless there be a bill of exceptions, the court cannot hear the case, or rather any exception founded on matter not of the record. Foregoing authorities.

The first point of exception made by the defendant is upon the ruling of the court sustaining the plaintiff's demurrer to defendant's fifth and sixth pleas, filed October 11, 1867.

In support of the correctness of the ruling of the court below, I cite among many authorities, 3 Kent's Com., 465, 467, and cases cited ; Alleyn, 27 ; 3 Johns., 44 ; 18 Vesey, 115 ; 1 Dallas, 210 ; 6 Mass., 63 ; 2 Wallace, 1, and cases cited ; 19 Wendell, 500 ; 4 Paige, 355 ; 3 Dutcher, (N. J.,) 515.

The only cases contra that I have been able to find, are Ripley vs. Wightman, 4 McCord, 447, and Bayley vs. Lawrence, 1 Bay, 449, (the latter case a mere memorandum and very unsatisfactorily reported.)

The law seemed to be well settled against these dissenting authorities. The decisions, English and American, have a remarkable unanimity.

As to the demurrer to the sixth plea, I cite section 69 of the act approved February 8th, 1861, to amend the pleading and practice in the courts of Florida. The facts set up in said plea are not such as, judgment having gone against defendant, would entitle him to relief in equity against such judgment. That is the criterion of the plea provided for by this section of the statute. 4 Paige, 355 ; 18 Vesey, 115.

The second point of exception by defendant is to the ruling of the court sustaining the demurrer to defendant's plea, put in as an amendment to his several pleas, and filed September 14, 1867. The record shows no exception taken at the time to the ruling of the court below, therefore it cannot now be considered. 16 Peters, 318 ; 6 Fla., 306 ; 19 How., 66 ; 1 Wallace, 592.

By his subsequent pleadings (December 7, 1868,) the defendant waived his exceptions to the rulings of the court on the demurrers, and the point cannot be considered in this court. 8 Fla., 206 ; ib., 453.

The third point of exception by defendant is to the ruling of the court sustaining the demurrer to the additional pleas filed December 7, 1868.

These pleas are bad, because the first one seeks to make acts of the plaintiff, in his personal character, affect his right to recover in his representative character ; because they seek to charge the intestate, after his death, with unlawful acts (conspiracy) alleged to have been committed before his death, and to try such issues collaterally ; because they seek to charge the intestate's estates with unlawful acts committed by other persons than intestate.

The matter complained of is not a subject of set-off. Mere tortuous acts of the landlord, wholly independent of the covenants of the respective parties, cannot be set up as a

32

defence to an action for rent. Sedgwick on the Measure of Damages, 441 ; 4 Sand., (S. C.,) 120.

Demands arising *ex delicto* cannot be set off against those arising *ex contractu.* 2 Parsons on Contracts, 241, and cases cited.

The plea of set-off should, in substance, be as full, clear and definite as a declaration. 2 Parsons on Cont., 252.

These pleas now under consideration have not these qualities. They do not apprise the plaintiff of the demand that he is to meet. The damages claimed are too great. Sedg. on Damages, 65, 68 ; 16 John., 122 ; 1 Chitty's Pl., 338 ; ib., 395, 399 ; 5 Wend., cited in Sedg., 65.

" Conspiracy " is a technical term in criminal law. It is an agreement between two or more persons falsely to indict or procure the indictment of another. More generally, a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful, by criminal or unlawful means. The word describes an indictable offence. Burr. Law Dictionary, title "Conspiracy."

If it has application to any combination not unlawful, such meaning should not be put upon the word as used in the pleas, because that construction of a pleading should be adopted which is most unfavorable to the party pleading. Stephen on Plead., 378.

Such construction being necessarily put upon the term " conspiracy " used in the pleas, the fact alleged is not susceptible of issue, because it would be putting a man on trial after his death for an alleged offence committed in his lifetime. Nor can the fact be inquired into collaterally, nor in a civil action, and without indictment or presentation by a grand jury.

Though a demurrer *ore tenus* may not be strictly regular, the judgment will not be reversed because the court below allowed it, (especially when the defendant made no exception to the *manner* in which the demurrer was interposed,

but only to the ruling of the demurrer,) if justice would not be subserved thereby.   1 Wallace, 598.

When a judgment effects the proper results, no matter by what erroneous reasoning it may have been induced, it will not be reversed.   11 Ala., 149.

Whilst the ruling of the court may be erroneous in some respects, the court will not reverse the judgment if the verdict is sustained by the evidence.   6 Fla., 482.

No exception is taken to the allowing of the demurrer to be interposed *ore tenus*, but only to the sustaining of it, and the argument must be confined to that point.   Rule 13 of the Rules of the Supreme Court.

The other exceptions, being the fourth, fifth, sixth and seventh points, cannot be heard, because they relate to rulings upon evidence, which evidence and the rulings upon it are not brought up by bill of exceptions, sealed and ordered to be made part of the record.   Authorities cited *ante.*

The witnesses offered to be introduced by defendant, referred to in the fourth and fifth exceptions, and whose testimony was rejected, were respectively the plaintiff and defendant in the action.   They are incompetent witnesses, by the proviso of the 2d section of the act of 1865, concerning testimony.   Pamphlet Laws of Florida, 1865, p. 35.

Sixth exception.—The acts or declarations of one calling himself the agent of another cannot affect his alleged principal, unless such acts or declarations be brought to the knowledge, actual or implied, of the other party and receive his assent.   The rule of evidence, "*res inter alios acta alteri nocere non debet,*" applies.

Seventh exception.—1 Greenleaf on Evidence, sec. 236, 240.   The agency of Francis F. L'Engle was shown by the lease to defendant, offered in evidence by the plaintiff, which was signed and sealed " Wm. J. L'Engle, by F. F. L'Engle, his attorney."   By offering that in evidence, the plaintiff admitted that Francis F. L'Engle was the agent of Wm. J. L'Engle.

That was the best evidence, and the attempt to prove the fact by the question to plaintiff's counsel was a violation of the rule against secondary evidence.   If the witness had answered affirmatively, he surely could not have been interrogated as to the contents of the letter of attorney.   It is not shown that any notice was served upon plaintiff to produce such letter of attorney, or that application of any kind was ever made for it, or that plaintiff ever refused to produce it. Greenl. on Ev., ch. 4, *passim.*

If the foregoing points and authorities are well taken and applicable, the appellee claims that the judgment of the court below should be affirmed.   5 Fla., 11 Fla., 6 Fla., and others.

The constitutional provision that all testimony shall be reduced to writing, signed by the witnesses and filed with the papers, does not make such testimony a part of the record and dispense with the necessity of the bill of exceptions for bringing the evidence before the appellate court.   20 How., 433, *et seq.;* 1 Wallace, 592 ; 8 Fla., 9 ; Smith's Com. on Stat. and Const. Law, p. 627, 676–7, 690–1, 693, 771, 831–3, 835–8, 879.

The interpretation and construction of constitutional provisions are governed by the same rules and principles.   Ib., sec. 702.

RANDALL, C. J., delivered the opinion of the Court.

The first point made by the appellee is that there is no bill of exceptions in the record, and that therefore the court cannot look into any of the matters assigned for error ; that every fair intendment is to be made in support of the judgment below, and in the absence of a bill of exceptions showing upon what ground the court decided, it will be presumed that it decided correctly.

If it is true that there is not a bill of exceptions, the ground taken by the appellee is correct according to the uniform decisions of common law courts.   The present court and the

former Supreme Court of this State have repeatedly so held; and that unless the testimony in the case was brought before it by a bill of exceptions, it could not regard it.

"At common law a writ of error lay for an error in law, apparent in the record, or for an error of fact where either party died before judgment; yet it lay not for an error in law not appearing in the record, and therefore when a party alleged anything, *ore tenus*, which was overruled by the judge, this could not be assigned for error not appearing within the record, nor being an error in fact but in law, and so the party grieved was without remedy." 2 Inst., 426. To provide a remedy the statute of Westminister 2d was enacted, which provided that exceptions should be allowed under the seal of one of the Justices. It is claimed here that there is no bill of exceptions under the seal of the circuit judge. The first statute of Florida on the subject was enacted in November, 1828, (Th. Dig., 351, sec. 3,) and it requires only *the signing* of the bill of exceptions by the judge, or if he refuse, then the signing by three bystanders. The act of Nov., 1829, one year afterwards, enacting the common and statute laws of England, provided that "said statutes and common law" be adopted except so far as they were not consistent "with the constitution and laws of the United States and the acts of the General Assembly of this State." It seems clear that this act did not change or affect our pre-existing statutes, and as a consequence if a seal was not necessary before under the statute, it was not made necessary by the enactment of the English law.

The act of 1852 relating to appeals and writs of error, provided that the "exceptions shall be tendered to the judge for his *signature*, in the same manner, and under the same regulations and provisions as bills of exceptions are now made up, signed and made part of the record."

The act of 1848, relating to writs of error in criminal cases, expressly requires the circuit judge to "sign and seal upon request any bill of exceptions taken" during the trial; but

the statutes relating to civil proceedings nowhere require the sealing of the bill.

The Supreme Court of this State has often passed upon the sufficiency of bills of exceptions, but has never expressly ruled upon this point. It has several times quoted the statute of Westminster with reference to the office and effect of a bill of exceptions, but without considering the point here made.

The Court in Bailey vs. Clark, 6 Fla., 522, speaks of a bill of exceptions being "made up with care by the judge under the solemn sanction of his signature and seal," referring to the common law practice; but the court says on the next page: " our statute provides the *manner of procuring* a bill of exceptions, but leaves its *effect* to the statute of Westminster, which is one of the acts mentioned in our statute adopting the common and statute laws of England, with certain exceptions."

Mr. Justice Thompson, in a book which unfortunately has not yet been printed, says very decidedly in a note, that the statutes of Florida have dispensed with the necessity of sealing a bill of exceptions. The very common omission of the seal in preparing and perfecting bills of exceptions by the circuit judges and by the bar of this State, as appears by inspecting numerous records here, shows that a seal has not been considered indispensable.

So far as this question is concerned, we are of the opinion that the law is precisely what it would have been if the statute of 1829 had not been passed, and that in civil causes a bill of exceptions may be perfected without being sealed by the judge.

We therefore proceed to examine such questions as have been presented by exceptions which appear in the record signed by the judge. But we must say that we cannot regard the paper given above as a " bill of exceptions." It is merely an assignment of errors. It does not show that any exceptions were taken during the progress of the trial to the

rulings of the court in excluding witnesses or refusing to hear evidence offered, nor at what stage of the trial the several alleged rulings were made as to the exclusion of witnesses, the relevancy of testimony offered, or its quality.

But according to the view we have taken as to what is sufficient to bring before this court the rulings in the court below, we shall consider the first, second and third errors assigned :

I. The fifth plea, to which a demurrer was sustained, alleges that the defendant was deprived of the beneficial use of the demised premises by the casualties and violence of war.

It will be only necessary to refer to authorities in determining the validity of this plea. Chancellor Kent (Com. 3, 495,) has examined and collated cases involving the question as to how far a tenant is excused from performing his covenants for the payment of rent, when he is deprived even by inevitable necessity or misfortune, and without any default on his part, or on the part of the landlord, of the enjoyment of the premises. " In Paradyne vs. Jayne, (Alleyn's Rep., 26,) an action of debt was brought for rent upon a lease for years, and the defendant pleaded by way of excuse for the non-payment of rent, that he had been driven from the premises by public enemies, viz : by Prince Rupert and his soldiers. The case was fully and ably argued before the King's Bench during the time of the civil wars in the reign of Charles I. It was insisted that by the law of reason, a man ought not to pay rent when he could not enjoy, without any default on his part, the land demised to him, and that the civil and canon law exempted the party in such a case. But Rolle (author of the Abridgment,) overruled the plea and held that neither the hostile army nor an inundation would exempt the tenant from paying rent. The same doctrine has been held to this day, and it is well settled, that upon an express contract to pay rent, the loss of the premises by fire or inundation, or external violence, will not ex-

empt the party from his obligation to pay rent. The case of Hallet vs. Wylie was decided on that principle ; 3 Johns. 44 ; 3 Burr, 1638, and it is settled that a court of equity will not grant relief. 3 Anst., 687 ; 18 Ves. 115, where the court of equity refused to interfere in favor of the tenant who was considered as having no equity against the effect of his express covenant to pay the rent.   *   *   It is to be observed that the case only applies to express agreements to pay, and if a party will voluntarily create a duty or charge upon himself, he ought to abide by it when the other party is not in fault, and when he might have provided, if he had chosen, against his responsibility in case of such accidents. The loss of the rent must fall either on the lessor or lessee, and there is no more equity that the landlord should bear it than the tenant, when the tenant has engaged expressly to pay the rent.   *   *   Inevitable accident will excuse a party from a penalty, but will not relieve him from his covenant to perform." The case of Fowler vs. Bolt, 6 Mass, 63, is strongly in point ; see also Gates vs. Green, 4 Paige, 355.

1 Hilliard's Abridgment, 463, sec. 7, cited by appellant, does not sustain his position. It merely says : " There are *some cases* where, although there is no actual eviction, yet the law will attach the same consequences *to the acts done* viz : a discharge of the rent, the tenant having lost the use of the land." Holland vs. Shaffer, 1 Dallas, 210, also cited by him, holds the lessee to the performance of his covenant to pay rent ; but excused, upon equitable principles, the agreement to deliver up in good repair. The case of Bayley vs. Lawrence, 1 Bay, 499, (So. Ca.,) seems to sustain the defence. That was covenant upon a lease of a ship yard at Hilton Head in 1774. The defence was that the lessee was driven off by the casualties of war, and deprived of the enjoyment. The whole of the opinion is in these words : " The defendant ought to pay for the time he peaceably enjoyed the premises, but not for any time he was prevented by the casualties of war." This was a fugitive case picked up by

the reporter and inserted some years after it was decided, and does not appear to have been decided by an appellate court. Hilliard on Real Property, sections 17, 18, says, " If the tenant has expressly covenanted or agreed to pay rent, he still remains liable to an action of covenant or an action of debt. Thus, if an army enter upon the land and expel him, he is still bound to pay rent."

It is believed that in all elementary books touching the question, this is laid down as the settled doctrine. The conclusion, therefore, is, that the demurrer to the fifth plea was properly sustained.

As to the sixth plea, it simply avers that defendant has offered to perform his covenant in part if he may be excused from the residue. This is not a legal or equitable defence within the meaning of the statute.

II. The second error alleged is, that the court sustained the demurrer to the defendant's plea put in as an amendment to his several pleas, and filed Sept. 14th, 1867.

As has been already stated, Judge Putnam sustained the demurrer and gave defendant leave to amend, and defendant, on the 11th of October, filed an amended plea.

In Ellison vs. Allen, 8 Fla., 206, the court considered that a demurrer was improperly overruled, but says, " Still the defendant cannot, under the after proceedings had in this cause, be permitted to avail himself of this exception, for it is well settled that if a party, after judgment upon demurrer is given against him, goes on to amend his pleadings and makes an issue to the country, he thereby waives his exception to the judgment upon the demurrer, and will not be permitted to assign it for error in the appellate court. If the defendant had desired to have that ruling reversed by this court, he should have refused to go to the country, and have permitted the judgment on the demurrer to stand. Going to issue on the pleading operated as a waiver of the exception." 5 How., U. S., 29 ; Morrison vs. Morrison, 3 Stewart, 444. Indeed it is uniformly held that if a party

whose pleading has been overruled pleads over, he thereby abandons the first pleading.

III. The third ground of error is that the court sustained the demurrer *ore tenus* to the pleas filed December 7, 1868, to-wit : a set-off of damages sustained by defendant growing out of a conspiracy against him entered into by the intestate and others.

The defendant insisted that he was entitled to set-off such claim under the statute, Th. Dig., 347, which reads as follows : " All debts or demands mutually existing between the parties at the commencement of the action, whether the same be liquidated or not, shall be proper subjects of set-off and may be pleaded accordingly."

A set-off is in the nature of a cross action and may be pleaded in all cases in which, if a suit were brought upon the subject matter of the set-off, the demand of the other party may be set-off against it.   This has never been allowed where the claim on the one side is assumpsit or debt, and on the other a trespass, or other action sounding in damages. The term " demand" as used, refers to matters growing out of contract, express or implied.   The utmost confusion would be introduced if matters of trespass, assault, slander, and the like, were construed to be " demands" within the meaning of the law to be set-off against a debt ; or, if in an action for slander or false imprisonment, a set-off of money due upon a promissory note or bond could be allowed.   The next section shows what class of demands are intended.  " In all actions to which the defendant may intend to plead a set-off, he shall at the time of filing the plea file therewith a true *copy or copies of the subject matter* of such set-off, and in case the jury shall find a balance for the defendant," &c. It is clear that the law refers to such demands as are usually the subjects of set-off, to wit : arising out of contract.   A *balance* clearly implies this.   The defendant has encountered the difficulty of applying the term in this case.   He has not " filed a *copy* " of his set-off, because it was impossible to do

Robinson vs. L'Engle—Opinion of Court.

so. A "bill of particulars" of such a "demand" would be an anomaly. Damages growing out of some breach or fact connected with the subject matter of a contract, are allowed frequently by way of *recoupment*, as fraud in a sale, and matters of that character, but always relating to the subject matter of the plaintiff's action. The demurrer was very properly sustained.

The fourth, fifth, sixth and seventh errors assigned, relate to alleged rulings of the court in rejecting certain testimony offered, and upon the competency of witnesses.

The paper purporting to be a bill of exceptions, which has been given above entire, does not show that any exceptions were taken to the ruling of the court in the progress of the trial, as has been already stated.

Error lies only on exceptions taken to the ruling of the law by the judge, and to the admission or rejection of the evidence. Beyond this, we have no power to look into the bill on a writ of error, as it is a creature of the statute and restricted to the points stated. *Ex parte* Crane, 5 Peters, 199; 4 How., 298, 401, 292, 418, 541; 1 Starkie, 465; 3 Fla., 114; 5 Fla., 467; 6 Fla., 516; 11 Fla., 138; and the numerous authorities cited in these cases.

A bill of exceptions is defined as follows: If the bill be not tacked to the record, it should set out the whole proceedings previous to the trial, but otherwise it begins with the proceedings after issue joined, and in either case it goes on to state the circumstances upon which it is founded, as that a witness was called to establish certain facts or evidence offered, or challenge made, or demurrer tendered; the allegations of counsel respecting the competency of the witness, the admissibility of the evidence or legal effect of it; the opinion of the court, the exception of the counsel to the opinion, &c. Bull. N. P., 317; Field, 788; 2 Dunlap's Prac., 643.

But it is presumed that the counsel who prepared the bill in this case considered that the memorandnm of the testi-

mony signed by the witnesses and copied into this record, and the statement signed by the witnesses as to the rulings of the court and the exceptions taken thereto, was a part of the "record" and supeseded the formal presentation thereof by means of a bill of exceptions. The present constitution of this State provides that "all the evidence" taken on a trial shall be written by the clerk under the control of the court, signed by the witnesses and "filed with the papers in the case."

Depositions in writing have always been allowed to be taken in this State, to be used on the trial, and were always "filed by the clerk with the papers in the case." Yet there has never been any exception made by the court in reference to this written evidence on file; it has always been required that it be presented on appeal or writ of error, by means of the bill of exceptions.

It is, however, beyond question that the clerk is merely required to reduce to writing *the evidence* to be signed by the witness. The constitutional provision does not require the clerk to note down everything that he may hear from the court and counsel. He may as well undertake to write down everything said by counsel in addressing the court or jury, and by the court to counsel or witnesses, as to note the questions, the objections and the ruling of the court. The witness is to sign the "*evidence*," and not the rulings of the court or speeches of counsel, though these be by chance incorporated in the body of his testimony. If the clerk's notes of the ruling of the court are to be taken as a verity, without the signature of the judge thereto, his blunders might work irreparable mischief. "Such a practice, (say the court in Proctor vs. Hart, 5 Fla., p. 470,) if sanctioned, would obviously lead to great looseness and uncertainty, and might work irreparable injury to parties litigant, for it would be to substitute the testimony of the clerk as to what was submitted to the jury for that of the judge, who alone is authorized to attest the matter. Indeed, it is beyond the province of

the clerk in the exercise of his official duty to certify to the existence of any matter which is not a matter of record," &c.

The testimony as written by the clerk and signed by the witness, filed among the papers, is thus preserved, and it is thus rendered exceedingly convenient to prepare a bill of exceptions by means thereof; but as it is no part of the duty of the clerk to note everything that transpires on the trial, his memoranda of matters other than the evidence cannot be noticed, unless it be certified by the judge and made substantially a bill of exceptions, any recognition of such matters not certified by the judge would not be warranted by law.

We cannot, therefore, recognize the memoranda of the clerk, and as the paper purporting to be a bill of exceptions in this case does not show that exceptions were taken *at the trial* to the rulings of the court, we must decline to consider the 4th, 5th, 6th and 7th errors assigned, the matters referred to not being lawfully before this court.

The general exception to the refusal of the judge to sign exceptions to the rulings of his predecessor was unnecessary. The former judge did note and sign the rulings and exceptions, and they are in the record.

The judgment of the Circuit Court is affirmed with costs.